# EXHIBIT A

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2024 – 6618 1                                      Division: J - 15

TIFFANIE CURRENT

VERSUS

HOUSING AUTHORITY OF NEW ORLEANS

FILED: _____        _____

                                                        DEPUTY CLERK

## PETITION FOR JUDICIAL REVIEW OF HOUSING AUTHORITY DECISION TO TERMINATE HOUSING ASSISTANCE

NOW INTO COURT, through undersigned counsel, comes TIFFANIE CURRENT, a

person of full age of majority, who for this petition alleges and says:

### PRELIMINARY STATEMENT

1.

Plaintiff, Tiffanie Current, is an Orleans Parish resident who, because of her limited

income, relies on housing assistance benefits. Ms. Current participates in the Section 8 Housing

Choice Voucher ("HCV") program pursuant to Section 8 of the U.S. Housing Act of 1937, 42

U.S.C. § 1437f.

2.

Ms. Current is a single mother who supports her four minor children and one grandchild,

ages 3 months, six, eight, ten, and thirteen, on a fixed income.

3.

Defendant Housing Authority of New Orleans ("HANO") administers the HCV program

in which Ms. Current is a participant.

4.

HANO proposed termination of Ms. Current and her children's housing assistance

because of unreported business income that appeared on her tax returns, and because of an

alleged unauthorized occupant.

1

5.

The business income was inaccurate and reported without Ms. Current's knowledge or consent, as Ms. Current does not have a business, did not make business income, and did not tell her tax preparer that she had business income.

6.

When informed that the business income was erroneous, HANO invited Ms. Current to amend her taxes in order to keep her housing assistance.

7.

Ms. Current retained a tax attorney through Southeast Louisiana Legal Services' Low Income Taxpayer Clinic, and filed amended taxes listing her self-employment income as $0. The amended returns were provided to HANO by the deadline imposed.

8.

Despite completing the steps prescribed by HANO, HANO issued a decision upholding the termination of Ms. Current and her minor children from the HCV program.

9.

Moreover Ms. Current is a victim of domestic violence. The alleged unauthorized occupant is Ms. Current's abuser, Jessie Harvey, who does not live with her. Due to HANO's erroneous termination of her housing assistance she cannot move to escape domestic violence. She was attacked by her abuser between the date of her proposed termination hearing and when the hearing decision was issued, and she faces an ongoing threat of imminent harm.

10.

For the reasons detailed herein, the decision to terminate Ms. Current's assistance was arbitrary and capricious, an abuse of discretion, not based on substantial evidence, and contrary to law, and should be vacated.

## PARTIES AND VENUE

11.

Ms. Current is a person of the age of majority residing in Orleans Parish.

12.

2

Housing Authority of New Orleans is a political subdivision of the state of Louisiana that operates conventional public housing, and issues rental assistance under the HCV program.

13.

Venue is proper in this District because the acts complained of occurred here, Ms. Current resides here, and HANO has its offices and conducts its business here.

## STATUTORY AND REGULATORY BACKGROUND

14.

As set forth in 42 U.S.C. § 1437f(a), the Section 8 Housing Choice Voucher ("HCV") program was established by Congress "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing . . . ."

15.

Unlike traditional public housing, the HCV program allows local Public Housing Authorities ("PHAs") to pay Housing Assistance Payments to private landlords to subsidize housing costs for program participants.

16.

HCV program participants agree to comply with certain family obligations, including to "supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition" and to provide "true and complete" information. 24 C.F.R. §§ 982.551(b)(2); (b)(4).

17.

Violation of a family obligation is a discretionary ground for termination of voucher assistance. 24 C.F.R. § 982.552(c)(1)(i).

18.

When termination is proposed, the participant is entitled to notice and an informal hearing. 24 C.F.R. §§ 982.555(a)(v); (e); 42 U.S.C. § 1437d(k).

19.

3

Under the Violence Against Women Reauthorization Act of 2022 ("VAWA") and its

implementing regulations, a participant cannot be terminated from the HCV program "as a direct

result direct result of the fact that the applicant or tenant is or has been a victim of domestic

violence, dating violence, sexual assault, or stalking." 24 C.F.R. § 5.2005(b)(1).

20.

Under VAWA, PHAs are required to have an emergency transfer plan for victims of

domestic violence, and are required to facilitate a victim's move with continued assistance

"quickly" when requested. 24 C.F.R. § 5.2005(e)(9).

21.

Local PHAs must adopt an Administrative Plan "that establishes local policies for

administration of the program in accordance with HUD requirements." 24 C.F.R. § 982.54(a).

22.

HANO's Administrative Plan states,

In the case of family-caused errors or program abuse, HANO **will** take into consideration:

- The seriousness of the offense and the extent of participation or culpability of

  individual family members;

- Any special circumstances surrounding the case;

- Any mitigating circumstances related to the disability of a family member;

- The effects of a particular remedy on family members who were not involved in

  the offense.[1]

23.

HANO's Administrative Plan further states, "[i]ncidents of actual or threatened

domestic violence, dating violence, sexual assault, or stalking will not be construed either as

---

[1] Housing Authority of New Orleans, *Housing Choice Voucher Program Administrative Plan*,
20-2 (Sept. 1, 2023), https://hano.org/plans/HANO_HCVP_AdminPlan_9-2023.pdf.

serious or repeated violations of the lease by the victim of such violence or as good cause for terminating the tenancy or occupancy rights of the victim of such violence."[2]

24.

HANO's Administrative Plan further states, "HANO allows tenants who are victims of domestic violence, dating violence, sexual assault, or stalking to request an emergency transfer from the tenant's current unit to another unit" even when the tenant is "not in good standing."[3]

25.

HANO is not bound by hearing decisions that are "contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law." 24 C.F.R. § 982.555(f).

## FACTUAL ALLEGATIONS

26.

Ms. Current is a single mother who supports her four minor children and one grandchild, ages 3 months, six, eight, ten, and thirteen, on a fixed income.

27.

Her sole source of income is Supplemental Security Income and Social Security received for herself and two of her minor children.

28.

Ms. Current receives this income because she cannot read, and has mental disabilities.

29.

Two of Ms. Current's children also have disabilities.

30.

As a result she relies on a housing subsidy through the HCV program, administered by the Housing Authority of New Orleans.

---

[2] *Id.* at 3-7.
[3] *Id.* at 16-2.

31.

In 2022 and 2023 Ms. Current's sole income was the aforementioned Supplemental Security Income and Social Security, which she reported to HANO.

32.

Ms. Current is a victim of domestic violence at the hands of her children's father, Jessie Harvey. In September, 2023 Mr. Harvey attempted to break windows and kick down Ms. Current's door. Mr. Harvey was arrested and charged with domestic abuse battery involving strangulation and domestic abuse child endangerment. The criminal court issued a stay-away order to protect Ms. Current. Mr. Harvey ultimately pled guilty to both charges and was released on probation in December, 2023.

33.

As part of sentencing, the criminal court issued a protective order to protect Ms. Current from Mr. Harvey. The order was issued on December 5, 2023 and lasts until December 5, 2025. Under the protective order, Mr. Harvey may not go within 100 yards of Ms. Current's residence.

34.

At no time did Mr. Harvey reside in Ms. Current's assisted unit.

35.

On February 23, 2024 HANO notified Ms. Current that she was under investigation for fraud, and requested income information for Mr. Harvey, even though he did not live with her and was subject to a protective order that barred him from her residence.

36.

Ms. Current provided her tax returns in response to HANO's request.

37.

6

During the week of February 26, 2024, Mr. Harvey took Ms. Current's eight year old son from school and fled to Baton Rouge. Ms. Current did not know where her son was until he was returned by Mr. Harvey's mother on March 6, 2024.

38.

On March 7, 2024, Ms. Current's legal advocate sent an emergency transfer request under the Violence Against Women Act ("VAWA") to HANO. The request explained that Ms. Current feared imminent harm for herself and her children. Attached were the protective order and HUD form 5382 "Certification of Domestic Violence," signed by Ms. Current.

39.

Rather than allow Ms. Current to move to safety, on March 8, 2024, HANO sent Ms. Current a notice proposing to terminate her assistance for (1) failure to supply required information, and (2) failure to provide truthful and complete information, in violation of her family obligations under the program. HANO also alleged that (3) Ms. Current had an unauthorized occupant, Jessie Harvey.

40.

The first two allegations were based on Ms. Current's 2022 and 2023 tax returns, which listed business income she had not reported to HANO.

41.

Tax preparers in Louisiana are unregulated and tax preparer fraud is common.

42.

Ms. Current was not aware of the business income reported on her tax returns until HANO brought it to her attention. The business income was not accurate and was reported by her tax preparer without her knowledge or consent.

43.

The third allegation was based on police reports listing Jessie Harvey as an occupant at Ms. Current's assisted unit.

7

44.

Ms. Current timely requested an informal hearing.

45.

The informal hearing was held on April 1, 2024.

46.

At the hearing, Ms. Current explained that she did not make the business income her tax reporter wrote on her tax returns.

47.

She also explained that Mr. Harvey did not live with her and was, in fact, her abuser. She presented a protective order as evidence of domestic violence.

48.

She explained that she faced imminent harm due to HANO's failure to allow her to move with assistance, since her abuser knew where she lived.

49.

She explained that she and her children were also unsafe at their current residence because her neighbor had been harassing them as a result of the neighbor's teenage son impregnating her then 12-year-old daughter.

50.

The hearing officer gave her until June 3, 2024 to amend her returns to reflect her actual income, but stated that an extension could be granted if necessary.

51.

At the hearing, a social worker from Southeast Louisiana Legal Services testified that they were assisting Ms. Current and her family moving forward.

52.

8

Prior to June 3, 2024, Ms. Current met with Southeast Louisiana Legal Services Low Income Taxpayer Clinic attorney Paul Tuttle, and amended her 2022 and 2023 tax returns to reflect that she made $0 business income.

53.

Attorney Tuttle advised Ms. Current that she could incur IRS tax liability based on the amended returns, and Ms. Current consented to the corrected filing.

54.

The SLLS Low Income Taxpayer Clinic is not set up as a tax preparation service; as such Attorney Tuttle cannot e-file amended returns. Instead, he must mail them in to the IRS.

55.

SLLS has no control or influence over how quickly the IRS, a federal agency, processes amended returns.

56.

On May 24, 2024, Ms. Current's legal advocate sent her amended returns (IRS 1040X forms) to HANO by email, stating, "I have attached Ms. Tiffanie Current's amended tax returns for the years 2023 & 2022. Please let me know if you need any additional information."

57.

The hearing officer did not respond to the email or request any additional information.

58.

On June 3, 2024, Jessie Harvey came to Ms. Current's assisted unit and physically injured her.

59.

On the next day, following this incident, Ms. Current's counsel sent a second emergency transfer request under VAWA.

60.

9

HANO failed to grant Ms. Current's emergency transfer request.

61.

On June 7, 2024, the hearing officer issued a decision upholding the termination of Ms. Current and her children's housing assistance.

62.

The hearing decision stated,

On May 24, 2024, your attorney provided a copy of 2 form 1040-X for amending tax returns that were filled out showing no income for you for the disputed time periods. There was no indication that the forms had been filed with the IRS but based on the information in the forms you would owe the IRS $19,856 if you filed the amended returns. We would need official documentation from the IRS to show that they received the amended return to calculate the correct amount owed to HANO, if anything.

63.

But the hearing officer never asked for documentation to prove that the amended returns had been filed. Nor did the hearing officer respond to SLLS's offer to provide any additional documentation that was needed. As such, it was not clear that that documentation was required.

64.

Regarding the alleged unauthorized occupant, the hearing officer concluded:

Based on the evidence it appears that Mr. Harvey did live with you for longer than HANO allows for guests but that you were a victim of domestic violence during that time and as of now Mr. Harvey is no longer living with you in the assisted unit.

65.

It was not clear whether the allegation of unauthorized occupant formed the basis of the decision to uphold the termination, and HANO did not respond to requests for clarification.

66.

On June 18, 2024, Ms. Current's legal advocate emailed HANO to request reconsideration of the termination decision, since she was never informed of the need for additional documentation. At that time she provided the cover letter from Ms. Current's SLLS tax attorney proving that the amended returns were mailed to the IRS before HANO's deadline.

10

67.

She received no response.

68.

On June 26, 2024, Southeast Louisiana Legal Services again notified HANO of its error, and expressed intent to take further legal action. In response, the hearing officer stated "the required information from the IRS showing that the amended return had been filed was not received by the deadline given during the hearing."

69.

As a result of the erroneous hearing decision, Ms. Current and her four minor children and her infant grandchild face imminent eviction and homelessness when their housing assistance payments are terminated on July 31, 2024.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**The Hearing Officer's decision is arbitrary and capricious, an abuse of discretion, and not based on substantial evidence because it is based on Ms. Current's failure to provide a document that was never requested.**

70.

Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

71.

The business income on Ms. Current's tax returns was never received by Ms. Current, and was reported without her knowledge or consent. Ms. Current cannot read and was unaware of the business income on her tax returns.

72.

When informed that the business income on her 2022 and 2023 tax returns was not accurate, HANO informed Ms. Current that she could amend her returns in order to keep her housing assistance.

11

73.

Ms. Current retained Southeast Louisiana Legal Services' Low Income Taxpayer Clinic

to amend her 2022 and 2023 taxes to remove the erroneous business income that was reported

without her knowledge or consent.

74.

Ms. Current amended her returns and SLLS submitted them to the IRS by HANO's

deadline.

75.

Nonetheless, HANO upheld the termination of Ms. Current's assistance.

76.

The hearing officer's upheld the termination because Ms. Current submitted her amended

returns, but did not submit proof that her SLLS tax attorney had filed them with the IRS.

77.

But the hearing officer never requested additional proof that SLLS had filed the amended

returns, and did not respond to counsel's offer to provide additional documents if needed.

78.

After receiving the hearing decision, Ms. Current's counsel provided a cover letter from

Ms. Current's tax attorney showing that the returns were mailed to the IRS before HANO's

deadline. However the hearing officer refused to reconsider his decision.

79.

The hearing officer's decision is not based on substantial evidence, is arbitrary and

capricious, and is an abuse of discretion.

## SECOND CLAIM FOR RELIEF

**The Hearing Officer's decision is arbitrary and capricious and an abuse of discretion
because it did not consider mitigating factors, as required by HANO's Administrative Plan.**

80.

Plaintiff re-alleges and incorporates by reference all allegations in all preceding

paragraphs.

81.

HANO's Administrative Plan **requires** that HANO consider the following when determining whether to terminate assistance for family caused errors and/or program abuse:

- The seriousness of the offense and the extent of participation or culpability of individual family members;

- Any special circumstances surrounding the case;

- Any mitigating circumstances related to the disability of a family member; and

- The effects of a particular remedy on family members who were not involved in the offense.[4]

82.

But the hearing officer failed to consider any of these factors, including the fact that Ms. Current's four minor children would face eviction and homelessness if the termination was upheld, and the fact that she and two of her minor children have disabilities.

83.

The hearing officer also failed to consider the special circumstances surrounding this case, namely that Ms. Current is a victim of domestic violence and faces imminent harm from her abuser due to HANO's refusal to allow her to move with assistance during this termination proceeding.

84.

The hearing officer also failed to consider that Ms. Current was a victim of tax preparer fraud, and took immediate steps to correct the error on her tax returns as soon as it was brought to her attention, despite the risk of incurring liability to the IRS.

85.

The hearing officer also failed to consider that Ms. Current was now connected with a social worker who could assist her moving forward.

86.

---

[4] *Supra* note 1.

13

HANO's failure to follow its own policy that requires consideration of the above

mitigating factors renders the hearing officer's decision arbitrary and capricious and an abuse of

discretion.

## THIRD CLAIM FOR RELIEF

**The Hearing Officer's decision is arbitrary and capricious because HANO has established
no violation of the Section 8 family obligations.**

87.

Plaintiff re-alleges and incorporates by reference all allegations in all preceding

paragraphs.

88.

Ms. Martin accurately reported her income to HANO.

89.

The errors in Ms. Martin's past tax filings, now corrected, do not provide a basis for a

HCV program termination.

90.

As such, the hearing officer's decision is not based on substantial evidence, is arbitrary

and capricious, and is an abuse of discretion.

## FOURTH CLAIM FOR RELIEF

**To the extent that the decision to uphold Ms. Current's termination is based on the
allegation that her abuser was an unauthorized occupant, it violates VAWA.**

91.

Plaintiff re-alleges and incorporates by reference all allegations in all preceding

paragraphs.

92.

VAWA, and HANO's Administrative Plan, prohibit termination of a participant's HCV

assistance as a direct result of domestic violence. 24 C.F.R. § 5.2005.

93.

14

The hearing decision is ambiguous as to whether the termination was upheld, in part, due to the allegation that Ms. Current's abuser was an unauthorized occupant.

94.

Ms. Current submitted to HANO a protective order showing that she was a victim of domestic violence at the hands of Jessie Harvey. She also requested an emergency transfer twice due to Mr. Harvey's acts of domestic violence against her. Once such act occurred *while she was waiting for HANO's hearing decision.*

95.

To the extent that the decision to uphold Ms. Current's termination is based on the allegation that her abuser was an unauthorized occupant, it violates VAWA and is therefore arbitrary, capricious, and contrary to law.

## FIFTH CLAIM FOR RELIEF

**To the extent that the decision to uphold Ms. Current's termination is based on the allegation that her abuser was an unauthorized occupant, it was based solely on a police report that stated Mr. Harvey resided at Ms. Current's assisted unit, and was therefore not based on substantial evidence.**

96.

Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

97.

To the extent that the decision to uphold Ms. Current's termination is based on the allegation that her abuser was an unauthorized occupant, it was based solely on a police report that stated Mr. Harvey resided at Ms. Current's assisted unit.

98.

Ms. Current testified that Mr. Harvey does not live with her, has never lived with her at her assisted unit, and in fact is her abuser against whom she has a protective order.

99.

15

Hearsay in the police report alone does not constitute substantial evidence sufficient to meet HANO's burden, because factors assuring underlying reliability and probative value were not present.

100.

Therefore the decision to uphold the termination based on the alleged unauthorized occupant was not based on substantial evidence.

## **FIFTH CLAIM FOR RELIEF**

**The hearing officer's decision that Ms. Current was not eligible for a VAWA transfer violated VAWA and HANO's policies, and therefore was arbitrary and capricious and not in accordance with law.**

101.

Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

102.

Ms. Current requested an emergency transfer under VAWA on March 7, 2024 and required all required documentation of domestic violence under VAWA. HANO failed to allow Ms. Current to move with continued assistance.

103.

Ms. Current requested an emergency transfer under VAWA again on June 4, 2024. HANO failed to allow Ms. Current to move with continued assistance.

104.

In the hearing, the hearing officer stated that Ms. Current was not eligible for a VAWA transfer because she was currently out of compliance with program rules.

105.

But Ms. Current was not out of compliance because her termination at that time was only proposed, and no hearing decision had been issued.

106.

16

Moreover, VAWA and its implementing regulations require that the agency have a policy to allow a participant to "move quickly with . . . assistance." 24 C.F.R. § 5.2005(e)(9).

107.

HANO's Administrative Plan states that a family is allowed to move with continued assistance where a family member is a victim of domestic violence and the move is needed to protect the health and safety of the family.[5]

108.

HANO's Administrative Plan further states that "[t]enants who are not in good standing may still request an emergency transfer if they meet the eligibility requirements in this section."[6]

109.

The hearing officer's decision that Ms. Current was not eligible for transfer while she was working to amend her tax returns therefore violated VAWA and was contrary to law, and violated HANO's Administrative Plan and was therefore arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff respectfully requests that this Court:

   a.   Allow Plaintiff to file this action and proceed *in forma pauperis*;

   b.   Order the Defendant to file the complete record of its administrative review of Ms. Current's proposed termination from the HCV program for the court's review;

   c.   After review of the record and hearing any arguments of counsel, vacate Defendant's decision terminating Ms. Current's housing assistance as not based on substantial evidence, arbitrary, capricious, and an abuse of discretion;

   d.   Tax costs of this proceeding to the Defendant, and

   e.   Award other relief as this Court may deem to be just and proper.

Respectfully submitted:

---

[5] *Id.* at 16-1.
[6] *Id.* at 16-2.

SOUTHEAST LOUISIANA LEGAL SERVICES

By: _____

HANNAH ADAMS, LSBA # 36343
DAVID WILLIAMS, LSBA #17867
1340 Poydras St. Suite 600
New Orleans, Louisiana  70112
Telephone: (504) 529-1000, ext. 258
Fax: (504) 596-2241


*Attorney for Plaintiff Tiffanie Current*

Please Serve:

Housing Authority of New Orleans
Keva Landrum, General Counsel
4100 Touro St.
New Orleans, LA 70122

18

## VERIFICATION

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

BEFORE ME, the undersigned authority, personally came and appeared TIFFANIE

CURRENT who, being by me first duly sworn, deposed; that she is the plaintiff in the attached

Petition, and that all allegations of fact made in the Petition, except those allegations expressly

made on information and belief; affiant believes to be true.

TIFFANIE CURRENT

**SWORN TO AND SUBSCRIBED**
**BEFORE ME ON THIS ___8___ DAY OF __July__ 2024**

**NOTARY PUBLIC**

HANNAH ADAMS
Notary Public
Notary ID No. 144209
Orleans Parish, Louisiana